777 P.2d 913

**James William CALLISON, Petitioner–Appellee,**

v.

**Laura Faye NAYLOR, once known as Laura Faye Callison, and Sheila Ann Callison, a minor, Respondents–Appellants.**

**No. 10981.**

Court of Appeals of New Mexico.

June 27, 1989.

Albert J. Mitchell, Jr., Albert J. Mitchell, P.A., Tucumcari, for petitioner-appellee.

Don W. Cihak, Brockman & Cihak, Tucumcari, for respondents-appellants.

## OPINION

APODACA, Judge.

This is an interlocutory appeal from an order of the trial court requiring that blood tests be performed on James William Callison (father), Laura Faye Naylor (mother) and Sheila Ann Callison (Sheila). The order was entered in a suit filed by father against mother and Sheila under the Uniform Parentage Act, NMSA 1978, Section 40–11–1 to –23 (Repl.Pamp.1986), in which he sought to determine whether he is the natural father of Sheila. Initially the trial court entered summary judgment in favor of mother and Sheila on the ground that a prior divorce proceeding collaterally es-

topped father from relitigating the issue of parentage. On motion for reconsideration, however, the trial court vacated summary judgment, ordered all three parties to obtain blood tests, and certified the case for interlocutory appeal, which we granted. We agree with the trial court's initial entry of summary judgment on the basis of collateral estoppel. Consequently, we hold that the trial court erred in vacating its judgment and reverse.

Father and mother were married in 1964 and divorced in 1976. The divorce petition, filed by father, listed three children born of the marriage, the youngest of whom was Sheila, then two years of age. Although father requested temporary custody of the children at the time the petition was filed, temporary custody was awarded to mother. A later agreement of the parties gave permanent custody to mother and established child support to be paid by father. The record contains no evidence that the parentage of any of the children was at issue at the time of the divorce.

On July 14, 1988, the trial court entered an order directing father to pay arrearages of $11,030.90 in child support and increasing child support for Sheila, the only child still under age 18, to $153 per month beginning July 1988. One week later, on July 21, 1988, father filed the petition to establish paternity of Sheila, which resulted in the order at issue in this appeal.

Father concedes he is collaterally estopped from relitigating the issue of paternity in the suit against mother. *See Torres v. Village of Capitan,* 92 N.M. 64, 582 P.2d 1277 (1978). He argues, however, that Sheila was not bound by the divorce decree because she was not a party to the divorce proceedings. He also states, without citing authority, that if he is estopped from relitigating the issue of parentage, Sheila will be barred from later bringing a paternity suit on her own behalf. We conclude father's arguments are without merit.

In a similar case, *In re Marriage of Holland,* 730 P.2d 410, 412 (Mont.1986), the Supreme Court of Montana discussed the doctrine of collateral estoppel as it applied to an action brought by a former husband

seeking to obtain determination of paternity under the Uniform Parentage Act. The former husband and wife had been divorced and the husband stated in his divorce petition that the child was "of the marriage." The divorce decree also found that the child was a "child of the parties." Later, the husband sought to contest paternity under the Uniform Parentage Act. The court, quoting from a prior decision, *Butler v. Brownlee*, 152 Mont. 453, 455, 451 P.2d 836, 838 (1969), observed: "A judgment not appealed from is conclusive between the parties as to all issues raised by pleadings actually litigated and adjudged as shown on the face of the judgment." This holding is entirely consistent with the doctrine of collateral estoppel.

█ Where paternity has been established in a divorce proceeding, an alleged father is barred under the doctrine of collateral estoppel from later questioning paternity in a proceeding under the Uniform Parentage Act. *See In re Gilbraith*, 32 Ohio St.3d 127, 512 N.E.2d 956 (1987). The purpose of collateral estoppel is to prevent endless relitigation of the same issues. *Adams v. United Steelworkers of Am.*, 97 N.M. 369, 640 P.2d 475 (1982).

█ Traditionally, four elements were deemed necessary to invoke collateral estoppel: (1) the parties were the same or in privity with the parties in the original action, (2) the subject matter or cause of action in the two suits was different, (3) the ultimate facts or issues were actually litigated, and (4) the issue was necessarily determined. *Reeves v. Wimberly*, 107 N.M. 231, 755 P.2d 75 (Ct.App.1988), citing *International Paper Co. v. Farrar*, 102 N.M. 739, 700 P.2d 642 (1985). Our supreme court, however, has now dispensed with the "same parties" requirement of collateral estoppel. *Reeves v. Wimberly*. *See Silva v. State*, 106 N.M. 472, 745 P.2d 380 (1987). Under the doctrine announced in *Silva* "defensive collateral estoppel may be applied when a defendant seeks to preclude a plaintiff from relitigating an issue the plaintiff has previously litigated and lost regardless of whether defendant was privy to the prior suit." 106 N.M. at 476,

745 P.2d at 384. The issue, consequently, is not whether *Sheila* is bound by the divorce decree, as argued by father. Instead, the relevant factor is that *father* is bound, and Sheila may assert the defense of collateral estoppel even though she was not a party to the divorce proceeding. However, collateral estoppel should be applied only where the trial judge determines that its application would not be fundamentally unfair, and the party against whom it is invoked must have had a full and fair opportunity to litigate the issue. *Silva v. State; Reeves v. Wimberly.*

█ We believe that the rationale of *Silva* applies to this appeal. Although father did not technically "lose" on the issue of parentage in the divorce proceeding, since he voluntarily agreed to the paternity, he is now attempting to obtain an opposite result from what was previously decided. He had the opportunity to raise the issue of parentage at the time of the divorce and failed to do so. He now argues that mother told him since the divorce that he is not Sheila's father; he also states that he did not have access to mother during the time Sheila was conceived. Surely he must have been aware of that fact at the time of the divorce and could have litigated the issue then; apparently he chose not to do so. We further note that it was father who filed the petition for divorce listing the children born "of the marriage"; Sheila was included.

In short, father has had his day in court. His argument that Sheila should not be bound by the prior determination is essentially an attempt to force her to litigate an issue that he himself is precluded from relitigating. We believe this is the result the supreme court was trying to avoid in *Silva* by the adoption of the modern collateral estoppel doctrine.

█ Father cites no authority to support his contention that Sheila would be barred from bringing a subsequent paternity suit on her own behalf should we hold against him in this appeal. The comment contained in Vol. 9B, Uniform Parentage Act § 7, 9 U.L.A. 306 (1987) is supportive of our disagreement with this contention: "Since the

U.S. Supreme Court decisions speak in terms of the child's substantive right to a legal relationship with his father, it was considered unreasonable to bar the *child's* right of action by reason of another person's failure to bring a paternity action." Although we generally avoid engaging in such speculation, in the event that in the future Sheila should wish to bring an action against a third party under the Uniform Parentage Act, we doubt that a judgment founded on collateral estoppel in this appeal would preclude her from doing so. Such an action would be brought to determine whether a parent-child relationship exists between Sheila and the third party, *see* Section 40–11–7, an issue that has not been litigated in either the divorce proceeding or in this case. We believe the doctrine of collateral estoppel would be inapplicable under such circumstances. *See Reeves v. Wimberly.* To hold otherwise would be tantamount to permitting a party bound by a prior judgment to extend that judgment to bind additional parties, simply by the filing of a complaint known to be without merit, in anticipation that the complaint would be dismissed on the basis of collateral estoppel.

In conclusion, we hold that, under the doctrine of collateral estoppel, the judgment in the divorce proceeding precludes father from bringing a later action questioning the paternity of Sheila with respect to both mother and Sheila.

The trial court's order is reversed; the case is remanded with instructions to dismiss father's petition against both respondents and to consider respondents' request for attorney fees and costs. On appeal, respondents are awarded attorney fees of $2,000 plus costs.

IT IS SO ORDERED.

DONNELLY and ALARID, JJ., concur.