DA 10-0559

IN THE SUPREME COURT OF THE STATE OF MONTANA

2011 MT 297

IN RE THE MARRIAGE OF
RHONDA ELAINE BAKER DAMSCHEN,

      Joint Petitioner and Appellant,

  and

DONALD DAVID DAMSCHEN,

      Joint Petitioner and Appellee.

APPEAL FROM:    District Court of the Fourth Judicial District,
In and For the County of Missoula, Cause No. DR-00-544
Honorable Ed McLean, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Richard A. Volinkaty, Attorney at Law, Missoula, Montana

      For Appellee:

          Jo Antonioli, Antonioli and Wade, P.C., Missoula, Montana

               Submitted on Briefs:  September 28, 2011

                        Decided:  November 29, 2011

Filed:

_____
Clerk

Justice James C. Nelson delivered the Opinion of the Court.

¶1  Rhonda Damschen appeals various orders of the District Court for the Fourth Judicial District, Missoula County, reducing the amount of child support she is to receive, and ordering her to repay her ex-husband, Donald Damschen, the amount of child support he overpaid along with his attorney's fees. We affirm and remand for a determination and assessment of costs and reasonable attorney's fees incurred on appeal.

¶2  Rhonda raised three issues on appeal which we have consolidated into the following two issues:

¶3  1. Whether the District Court erred in granting Donald's Motion to Modify Child Support.

¶4  2. Whether the District Court erred: (a) in awarding attorney's fees to Donald; and (b) in the amount of attorney's fees it awarded to Donald.

**Factual and Procedural Background**

¶5  Rhonda and Donald married in June 1989 in Missoula County. Both Rhonda and Donald are physicians. At the time the parties divorced in October 2000, Donald was employed as a general surgeon at Clark Fork Valley Hospital in Plains, while Rhonda remained at home to care for and home-school their three children, ages 6, 4 and 1 years old. Donald has since gone into private practice in Plains as a general surgeon, and Rhonda is currently employed part-time as a physician at the Montana State Hospital in Warm Springs.

¶6  The parties' marriage was dissolved by a Decree of Dissolution of Marriage on October 18, 2000. The decree included a "Marital Dissolution Settlement Agreement and

2

Parenting Plan" (the Agreement) dated August 31, 2000. The Agreement provided that the parties would share the joint parenting of the children, but that Rhonda would be "the primary residential parent" and that Donald would have "frequent and liberal contact" with the children.

¶7    The Agreement provided the following regarding child support:

> Donald agrees to pay child support to Rhonda as follows:
> Twenty-six percent (26%) of his gross salary, including bonuses, until [A] reaches the age of eighteen (18);
> After [A] reaches the age of eighteen (18), [Donald] will pay twenty percent (20%) of his gross salary, including bonuses until [B] reaches the age of eighteen (18);
> After [B] reaches the age of eighteen (18), [Donald] will pay fourteen percent (14%) of his gross salary, including bonuses, until [C] reaches the age of eighteen (18).

The parties also stipulated in the Agreement that they recognized that it was "outside the guidelines of the Uniform Child Support Guidelines." Based on the Agreement, Donald's child support obligation in 2000 when the parties divorced was $3,358 per month. Later, when Donald went into private practice, he received a lower salary and his monthly obligation was reduced to $2,600 per month.

¶8    The parties entered into a permanent settlement agreement on August 14, 2003, amending the original Agreement and changing residential custody of the children from Rhonda having primary residential custody to both parents sharing residential custody. The Agreement was further amended by the District Court in January 2005, to provide for enrolling the children in public school, and for alternating custody between Rhonda and Donald on a weekly basis.

3

¶9 On September 28, 2007, Donald filed a Motion to Modify Child Support pursuant to § 40-4-208(2)(b)(i), MCA, alleging that there had been a substantial and continuing change of circumstances so as to make the existing terms unconscionable. Donald noted in his motion that when the parties entered into the Agreement, the children resided primarily with Rhonda and Rhonda was responsible for the majority of their expenses, including their home-schooling expenses. Now, however, the children are enrolled in public school and reside half of the time with Donald and half of the time with Rhonda. In addition, Donald stated that he pays for nearly all of the children's extracurricular activities including all expenses for their participation in sports, Boy Scouts and camp. Donald also stated that he pays for all of the costs associated with their school activities including band instruments, field trips and attendance at school functions.

¶10 Donald contended in his motion that Rhonda's financial situation has changed considerably since the parties entered into the Agreement. Donald noted that Rhonda was not working at the time they divorced, so her income was not considered in calculating child support. However, since that time, Rhonda has become employed part-time as a physician at the Montana State Hospital in Warm Springs where, according to Donald, she earns a substantial income. Consequently, Donald maintained that because the foundational elements upon which the original child support calculation was based no longer existed, his child support obligation must be modified.

¶11 After briefing by both parties, the District Court entered an order on March 7, 2008, stating that the changes alleged by Donald were the kind of changes anticipated by § 40-4-208, MCA. Thus, the court referred the matter to Ann Steffins, with Guidelines

4

Consulting, for a child support calculation, and ordered that upon receipt of Steffens' calculations, the parties "shall proceed to a Master-supervised Settlement Conference."

¶12    On June 11, 2009, prior to Steffens issuing her report in the child support matter, Rhonda filed a Motion to Amend Parenting Plan claiming that the parties' 15-year-old son, D.J.D., wanted to live with her full time. Rhonda stated in her motion that "D.J.D. desires to assert his right to live [where] he wants subject to routine parental restrictions." She also stated that she has neither encouraged nor discouraged D.J.D.'s request.

¶13    In an affidavit accompanying the motion, D.J.D. asserted that he would be "more comfortable and less anxious" at his mother's. D.J.D. also pointed out that his maternal grandparents live next door to his mother, and that he would like to spend more time with them. D.J.D. proposed that he visit his father once a month for a four-day weekend set to coincide with when his younger brothers are at his father's.

¶14    Steffens issued her report and recommendations regarding child support on June 30, 2009. Attached to her report were three separate child support worksheets. In the first worksheet, Steffens used Rhonda's actual income to calculate child support resulting in a child support payment from Donald to Rhonda of $488 per month. In the second worksheet, noting that there was no reason Rhonda could not maintain full-time employment, Steffens imputed a larger income to Rhonda resulting in a child support payment from Donald to Rhonda of $83 per month. In the third worksheet, Steffens imputed the same income for Rhonda as in the second worksheet, but she added the cost of including the parties' oldest child on Donald's automobile insurance policy. This resulted in a child support payment from Donald to Rhonda of $44 per month.

5

¶15   Notwithstanding the results of the child support calculations, Steffens recommended that neither Donald nor Rhonda pay any child support to the other parent as long as the three children divide their time equally between their parents. Steffens noted, however, that if the court wished to order a specific amount of support, she would recommend the $83 per month payment from Donald to Rhonda based on worksheet two until such time as Donald adds their oldest child to his automobile insurance policy, then the payment should be reduced to $44 per month based on worksheet three.

¶16   Rhonda filed her objections to Steffens' report contending that Steffens' subjective analysis was heavily tilted toward Donald and against Rhonda. Rhonda further contended that Steffens based her calculations and recommendations upon subjective interpretations in great part influenced by acceptance of Donald's allegations about Rhonda's career opportunities. Rhonda also complained that Steffens imputed income to Rhonda, a family physician, in an amount that was $8,000 greater than the income designated for Donald, a surgeon. The parties proceeded to a master-supervised settlement conference as ordered by the District Court, but did not reach a settlement of the child support issues.

¶17   In its October 23, 2009 Findings of Fact, Conclusions of Law and Order, the District Court denied Rhonda's motion to amend the parties' parenting plan, but granted Donald's motion to modify child support. Regarding Rhonda's motion, the court determined that because Rhonda spends 11 days each month working at the Montana State Hospital in Warm Springs, it was too risky to allow D.J.D. to live unattended at his mother's home in Plains while she was away at work since he already had a history of

6

missing school. As to Donald's Motion to Modify Child Support, the court ordered that Donald pay Rhonda $488 per month retroactive to September 28, 2007.

¶18 Thereafter, Donald moved the court for an award of attorney's fees since he was the prevailing party on both motions. In doing so, Donald relied on the following provision in the parties' Agreement: "Should any action be commenced to enforce, modify or interpret any provision contained herein, the court, as a cost of suit, shall award a reasonable attorney's fee to the successful party." The District Court granted Donald's motion and set a hearing to determine the reasonableness of the attorney's fees. The court also ordered that Rhonda repay Donald the $50,688 in child support that Donald overpaid from September 28, 2007, the date his Motion to Modify Child Support was filed, through October 9, 2009, the date of the court's order granting Donald's motion. The court further ordered that Rhonda repay this amount at the rate of $500 per month.

¶19 On February 2, 2011, after holding two evidentiary hearings on the amount and reasonableness of attorney's fees, the District Court entered its Order Setting Amount of Attorney Fees and Final Judgment. In its order, the court concluded that attorney's fees in the amount of $30,166.50 were reasonably expended by Donald in defeating Rhonda's Motion to Amend Parenting Plan and in prosecuting and prevailing on his Motion to Modify Child Support. Thus, the court ordered that, based on the parties' Agreement, because Donald was the prevailing party on these matters, Rhonda must pay Donald's attorney's fees.

¶20 Rhonda appeals the District Court's orders modifying Donald's child support obligation as well as the court's orders awarding Donald his attorney's fees. Rhonda does not appeal the court's order denying her Motion to Amend Parenting Plan.

**Issue 1.**

¶21 *Whether the District Court erred in granting Donald's Motion to Modify Child Support.*

¶22 In child support modification cases, we review a district court's findings of fact to determine whether those findings are clearly erroneous. *Midence v. Hampton*, 2006 MT 294, ¶ 11, 334 Mont. 388, 147 P.3d 227 (citing *In re Marriage of Martinich-Buhl*, 2002 MT 224, ¶ 12, 311 Mont. 375, 56 P.3d 317). We review a district court's conclusions of law to determine whether the court's conclusions are correct. *Midence*, ¶ 11. Furthermore,

> [w]here a modification of child support is made pursuant to § 40-4-208 (2)(b)(i), MCA,[1] a district court's determinations regarding substantial and continuing changed circumstances and unconscionability are discretionary. As a result, we review those determinations for abuse of discretion.

*In re Marriage of Jarussi*, 1998 MT 272, ¶ 7, 291 Mont. 371, 968 P.2d 720. The burden of demonstrating both substantial and continuing change, and unconscionable terms, is on the moving party. *In re Marriage of O'Moore*, 2002 MT 31, ¶ 8, 308 Mont. 258, 42 P.3d

---

[1] Section 40-4-208(2)(b)(i), MCA, specifically provides that whenever a decree contains provisions relating to maintenance or support, modification may only be made "upon a showing of changed circumstances so substantial and continuing as to make the terms unconscionable."

8

767 (citing *In re Marriage of Callahan*, 233 Mont. 465, 469, 762 P.2d 205, 208 (1988); *In re Marriage of Barnard,* 264 Mont. 103, 106, 870 P.2d 91, 93 (1994)).

¶23    Rhonda contends on appeal that the District Court erred when it failed to hold an evidentiary hearing to determine whether the allegations contained in Donald's Motion to Modify Child Support were sufficient to constitute the kinds of substantial and continuous changes in circumstances anticipated by § 40-4-208, MCA; failed to make express findings that substantial and continuous changes in circumstances existed since the original award of child support; and failed to rule that the existing child support obligation was unconscionable.    Rhonda also contends that because the parties' Agreement is a valid contract, the District Court erred in failing to enforce the child support formula set forth in that Agreement.

¶24    Rhonda's argument that the District Court erred in failing to hold an evidentiary hearing on Donald's Motion to Modify Child Support is not well taken.    Rhonda completely ignores the fact that in the seven years between the parties' divorce and the filing of Donald's motion, there were any number of hearings in the District Court to address vacation plans, holiday visitation schedules, home-schooling, public schooling, and numerous other matters.  Hence, evidence of the changed circumstances was already in the court record.  In fact, in a May 9, 2006 Order, the judge who retained jurisdiction throughout these proceedings summed up the litigation as follows:

> The Court notes that this case now takes up 2 complete court files since the entry of the Decree of Dissolution on October 18, 2000, with redundant hearings related to Rhonda Damschen's interference with Donald Damschen's parenting, requiring lengthy amounts of time and attention

9

from the Court. There have been numerous lengthy hearings on parenting issues.

¶25 Not only was the District Court familiar with the changes in circumstances cited by Donald, but the court itself had ordered several of the changes, including the change from home-schooling to public schooling and the alternating weekly residential schedule. Clearly, no further evidentiary hearing was necessary.

¶26 Likewise, Rhonda's argument that the District Court failed to make express findings that substantial and continuous changes in circumstances existed since the original award of child support is without merit. In its March 7, 2008 Order granting Donald's Motion to Modify Child Support, the court stated:

> Since the original child support Order was entered, the circumstances of the children have changed . . . .
> The children are no longer being home-schooled and [Rhonda] is no longer bearing the cost of the home schooling. The boys are currently enrolled in public school. The children no longer reside primarily with their mother and since 2003 have lived with each parent one-half of the time. [Donald] pays for a significant number of the children's extra-curricular activities. [Rhonda] has a new partner in her household and [Donald] has re-married. The three children are, of course, seven years older and two have become teenagers while one is a pre-teen. [Rhonda] has become employed on a part-time basis and travels with her work.

¶27 In addition, we have recognized in previous cases that changes in residential custody and in payment of the children's expenses are the types of changes which "tend to render the prior child support order unconscionable." *In re Marriage of Mills*, 2006 MT 149, ¶ 16, 332 Mont. 415, 138 P.3d 815.

¶28 Furthermore, while Rhonda is correct that the District Court did not expressly rule that the existing child support obligation was "unconscionable," the court directly quoted the language of § 40-4-208, MCA, referring to unconscionable terms, and then stated that

> [t]hese changes, taken together with the length of time which has elapsed since the original child support provision was Ordered, constitute the kinds of substantial and continuing changes in circumstances anticipated by § 40-4-208, MCA.

Thus, contrary to Rhonda's contentions, by stating that the changes in circumstances in this case are the kind anticipated by § 40-4-208, MCA, the court clearly considered the parties' previous agreement regarding child support unconscionable.

¶29 Moreover, we have held that the exact wording of § 40-4-208(2)(b), MCA, need not appear in a district court's findings as long as this Court can determine whether, in light of the evidence and the findings based thereon that the district court's findings are not clearly erroneous, and that, in making its judgment, the court adhered to the standards outlined in the statute. *Jarussi*, ¶ 10.

¶30 We also find Rhonda's argument regarding the nature of the parties' Agreement without merit. She contends that because the parties' Agreement is a valid contract, the child support formula set forth in that Agreement must be enforced and may not be modified. However, this argument is contrary to Montana law.

¶31 Section 40-4-201(2), MCA, provides in pertinent part:

> [I]n a proceeding for dissolution of marriage or for legal separation, the terms of the separation agreement, *except those providing for the support, parenting, and parental contact with children*, are binding upon the court unless it finds, after considering the economic circumstances of the parties and any other relevant evidence produced by the parties, on their own

11

motion or on request of the court, that the separation agreement is unconscionable. [Emphasis added.]

In addition, § 40-4-201(6), MCA, provides in pertinent part:

*[E]xcept for terms concerning the support, parenting, or parental contact with the children*, the decree may expressly preclude or limit modification of terms set forth in the decree if provided for in the separation agreement. [Emphasis added.]

¶32 We have reiterated at every opportunity that the court's statutory authority to determine appropriate child support and to modify child support under changed circumstances cannot be contracted away by the parties. *See e.g. In re Marriage of Mager*, 241 Mont. 78, 80-81, 785 P.2d 198, 200 (1990) (Separation or settlement agreements providing for support, custody or visitation of children are not binding upon a district court.); *In re Marriage of Simms*, 264 Mont. 317, 325, 871 P.2d 899, 904 (1994) (A district court is not bound by the parties' determinations on matters of support, custody and visitation, whether it is by written agreement or an oral, in-court stipulation. Instead, on those issues, the court must apply the appropriate statutory criteria.); *Brandon v. Brandon*, 271 Mont. 149, 894 P.2d 951 (1995) (The terms of a separation agreement providing for the support, custody, and visitation of children are not binding upon the court.); *In re Marriage of Kovash*, 270 Mont. 517, 522, 893 P.2d 860, 863 (1995) ("Parties cannot make binding agreements, oral or written, as to support, custody or visitation of children."); *In re Marriage of Widhalm*, 279 Mont. 97, 101, 926 P.2d 748, 750 (1996) ("Separation or settlement agreements providing for support, custody or visitation of children are not binding upon the District Court.").

12

¶33　Rhonda relies on *Winters v. Winters*, 188 Mont. 43, 610 P.2d 1165 (1980), to support her argument that the Agreement precludes modification of child support. However, Rhonda's reliance on *Winters* is misplaced.

¶34　In *Winters*, the husband agreed to pay $500 per month to the wife for ten years, which included support for the children and the wife, as well as a property settlement payment for the marital home awarded to the wife. We held in *Winters* that this payment provision created a contractual obligation on the part of the husband and could not be modified without the mutual consent of the parties. *Winters*, 188 Mont. at 46, 610 P.2d at 1167-68. Notwithstanding, we also stated in *Winters* that "[w]hat we hold here has no bearing on the power of the court to modify agreements of the parties regarding child support in later applications." *Winters*, 188 Mont. at 47, 610 P.2d at 1168 (citing *Butler v. Brownlee*, 152 Mont. 453, 451 P.2d 836 (1969)). Thus, *Winters* may not be applied to the facts in this case.

¶35　Based on the foregoing, we conclude that the District Court's findings of fact are supported by substantial evidence and its determination that the substantial and continuing changes in circumstances in this case meet the statutory requirements of § 40-4-208, MCA, is not an abuse of discretion. Accordingly, we hold that the District Court did not err in granting Donald's Motion to Modify Child Support.

**Issue 2.**

¶36　*Whether the District Court erred: (a) in awarding attorney's fees to Donald; and (b) in the amount of attorney's fees it awarded to Donald.*

¶37 Rhonda contends that the District Court erred when it awarded attorney's fees to Donald based on the parties' Agreement, and that by doing so, the court misapplied contract law and abused its discretion. Rhonda also contends that the court erred in the amount of attorney's fees awarded as the court included fees for pleadings not related to the motions for modification of child support and for amendment of the parenting plan as well as for matters on which Donald did not prevail.

¶38 Donald contends that the District Court properly awarded attorney's fees to him because the parties' Agreement specifically provides for an award of attorney's fees to the prevailing party in subsequent proceedings. The Agreement states:

> Should any action be commenced to enforce, modify, or interpret any provision contained herein, the court, as a cost of suit, shall award a reasonable attorney's fee to the successful party.

Donald further contends that it is undisputed that he was the prevailing party on his Motion to Modify Child Support and in his opposition to Rhonda's Motion to Modify the Parenting Plan.

¶39 A court's determination as to which party is the prevailing party and thereby entitled to attorney's fees is a question of law. *Kruer v. Three Creeks Ranch of Wyoming*, 2008 MT 315, ¶ 16, 346 Mont. 66, 194 P.3d 634 (citing *Boe v. Court Adm'r for the Mon. Jud. Branch*, 2007 MT 7, ¶ 5, 335 Mont. 228, 150 P.3d 927; *In re Petition of Deadman's Basin Users*, 2002 MT 15, ¶ 9, 308 Mont. 168, 40 P.3d 387). We review a district court's decisions regarding questions of law for correctness. *Kruer*, ¶ 16. In addition, we review a district court's award of attorney's fees for an abuse of discretion. *Kruer*, ¶ 16 (citing *El Dorado Heights Homeown. Ass'n v. Dewitt*, 2008 MT 199, ¶ 15, 344 Mont. 77, 186

14

P.3d 1249).  A district court abuses its discretion when it acts arbitrarily without employment of conscientious judgment or so exceeds the bounds of reason as to work a substantial injustice.  *In re Chamberlin*, 2011 MT 253, ¶ 10, 362 Mont. 226, ___ P.3d ___ (quoting *In re Marriage of Kessler*, 2011 MT 54, ¶ 15, 359 Mont. 419, 251 P.3d 147).

*(a) award of attorney's fees*

¶40    In the instant case, Rhonda objects to the award of attorney's fees to Donald on the basis that the District Court modified the child support obligation set forth in the Agreement yet gave effect to another portion of the same Agreement which provided that attorney's fees were to be awarded to the prevailing party in the event of litigation concerning the interpretation or enforcement of the Agreement.  Rhonda argues that such treatment by the District Court is "inconsistent" and, in effect, eviscerates the entire Agreement.  She maintains that when the District Court concluded that the parties could not determine child support by contract, it should have determined that any award of attorney's fees incurred in determining child support must also be done "outside the contract."  Thus, instead of relying on the parties' Agreement to award attorney's fees, Rhonda contends that any award of attorney's fees should have been determined under § 40-4-110, MCA.

¶41    Rhonda cites no authority for her position, thus we refuse to consider her argument.  M. R. App. P. 12(1)(f) requires that the argument section of a brief "contain the contentions of the appellant with respect to the issues presented, and the reasons therefor, with citations to the authorities, statutes, and pages of the record relied on . . . ."

15

Because this Court is under no obligation to locate authorities or formulate arguments for a party in support of positions taken on appeal, we, as a general rule, will not consider unsupported issues or arguments. *Leichtfuss v. Dabney*, 2005 MT 271, ¶ 37 n.8, 329 Mont. 129, 122 P.3d 1220 (citing *In re Marriage of McMahon*, 2002 MT 198, ¶ 6, 311 Mont. 175, 53 P.3d 1266).

¶42 "Attorney fees provisions contained in marital settlement agreements are enforceable agreements and the district court is bound by the agreement's terms if they are clear." *In re Marriage of Cini*, 2011 MT 295, ¶ 27, ___ Mont. ___, ___ P.3d ___ (quoting *Hart v. Hart*, 2011 MT 102, ¶ 28, 360 Mont. 308, 258 P.3d 389). In this case, the parties' Agreement specifically provides for an award of attorney's fees to the prevailing party in subsequent proceedings. Consequently, we hold that the District Court did not abuse its discretion in awarding Donald his attorney's fees in this action. For the same reason, we hold that Donald is also entitled to his attorney's fees on appeal. *Cini*, ¶ 27.

*(b) amount of attorney's fees awarded*

¶43 Rhonda also objects to the amount of attorney's fees awarded to Donald claiming that the District Court erred by including fees for pleadings not related to the motions for modification of child support and for amendment of the parenting plan, as well as fees for matters on which Donald did not prevail. We conclude, however, that Rhonda's argument is without merit.

¶44 The pleadings that Rhonda claims were not related to the motions for modification of child support and for amendment of the parenting plan were, contrary to Rhonda's

contentions, clearly related to these motions. The pleadings Rhonda complains of dealt with preparation and finalization of the Final Order and Judgment on the motions on which Donald prevailed; preparation and participation in the hearing on the Final Order and Judgment; preparation of the Affidavit of Attorney's Fees ordered by the District Court; and responses to Rhonda's objections to an award of attorney's fees.

¶45    In addition, the matters on which, according to Rhonda, Donald did not prevail, yet he received attorney's fees, included: (1) a Justice of the Peace Court Order of Protection; (2) a request for interest on any judgment amount awarded; and (3) the court's denial of Donald's request to rule on the unconscionability of child support. As to the first matter, the District Court did not award Donald any attorney's fees related to the Order of Protection. The District Court specifically addressed this matter and deducted any fees related to the Order of Protection from the award of attorney's fees. With regard to the second matter, it is uncontested that Donald prevailed on his Motion to Modify Child Support and that the District Court ordered that he be reimbursed for any overpayment of child support from the date he filed his motion. While Donald voluntarily relinquished his claim for prejudgment interest, that does not negate the fact that he prevailed on his motion. As to the third matter, the fact that the District Court declined to add the term "unconscionable" in its Final Order actually supports Donald's previous argument that the court's March 7, 2008 Order was sufficient on its face.

¶46    The reasonableness of attorney's fees must be ascertained under the facts of each case. *Plath v. Schonrock*, 2003 MT 21, ¶ 36, 314 Mont. 101, 64 P.3d 984 (citing *Morning Star Enterprises v. R.H. Grover*, 247 Mont. 105, 114, 805 P.2d 553, 558

17

(1991)).  In making such a determination, the following factors should be considered as guidelines:

> (1) the amount and character of the services rendered; (2) the labor, time and trouble involved; (3) the character and importance of the litigation in which the services were rendered; (4) the amount of money or the value of the property to be affected; (5) the professional skill and experience called for; (6) the attorneys' character and standing in their profession; and (7) the results secured by the services of the attorneys.

*Plath*, ¶ 36 (citing *Swenson v. Janke*, 274 Mont. 354, 361, 908 P.2d 678, 682-83 (1995)).

However, these guidelines are not exclusive; the trial court may consider other factors as well.  *Plath*, ¶ 36 (citing *Morning Star Enterprises*, 247 Mont. at 113, 805 P.2d at 558).

¶47    In the case *sub judice*, the District Court held two hearings regarding attorney's fees.  At those hearings, Donald offered testimony—including expert testimony—and documentary evidence on these factors.  The District Court considered all of the information, legal arguments, and opinions of both expert and lay witnesses in reaching its decision.  In addition, the court found the following:

> Rhonda has the income ability, resources, and assets necessary to meet her obligation to pay the fees awarded here, particularly in light of the fact that she has had the financial benefit of the over-payment of child support over a 2 year period in the aggregate amount of more than $50,000 which allowed her to purchase real property.

¶48    Based on our review of the record, we conclude that Rhonda has not established that the District Court abused its discretion in determining the amount and reasonableness of the fees awarded.  Accordingly, we hold that the District Court did not err in the amount of attorney's fees it awarded to Donald.

¶49    We affirm the District Court's orders granting Donald's Motion to Modify Child Support and awarding Donald his attorney's fees, and we remand for a determination and assessment of costs and reasonable attorney's fees incurred on appeal.

/S/ JAMES C. NELSON

We Concur:

/S/ MIKE McGRATH
/S/ PATRICIA COTTER
/S/ BETH BAKER
/S/ MICHAEL E WHEAT